# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

|  |  |  |
|---|---|---|
| PAULETTE WEDDING, *individually and on behalf of those similarly-situated*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _4:24-CV-44-BJB_ |
| MADISONVILLE HEALTH AND REHABILITATION LLC, SIMCHA HYMAN, NAFTALI ZANZIPER, and CLEARVIEW HEALTHCARE MANAGEMENT KY LLC | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Comes Plaintiff Paulette Wedding, by and through counsel, and, for her Class Action and Collective Action Complaint Under the Fair Labor Standards Act, 29 U.S.C. § 201 e*t. seq.* ("FLSA") and Kentucky Wages and Hours Act, K.R.S. § 337.275 *et seq.* ("KWHA"), against Defendants Madisonville Health and Rehabilitation LLC ("hereafter, "Madisonville Health"), Simcha Hyman, Naftali Zanizper, and Clearview Healthcare Management Ky LLC (hereafter, "Clearview"), states as follows:

### I.    Introduction to the Action

1.    Defendants had Plaintiff and similarly-situated employees work more than forty hours in a workweek, but then failed to pay the full overtime rate of pay owed to the employees under the FLSA and KWHA.  Specifically, Defendants employed Plaintiff and other non-exempt employees at Defendants' nursing home facilities in Kentucky and paid them hourly for their work. However, Defendants did not pay the correct amount of overtime compensation for employees'

overtime work. Instead, Defendants paid Plaintiff and the similarly-situated employees multiple types of compensation for their work performed, but only took into account certain of those types of compensation (while improperly disregarding others of those types of compensation) when calculating the overtime rate of pay of Plaintiff and similarly-situated employees.

2.     With respect to Defendants Simcha Hyman, Naftali Zanziper, and Clearview, the proposed class of similarly-situated employees consists of all employees who, with respect to any one or more workweek for which the regular payday occurred in the last five years (a) worked 40 hours or more in such workweek while (b) employed in Kentucky (c) by any entity (1) owned, directly or indirectly, by Mr. Hyman and/or Mr. Zanziper, and (2) managed by Defendant Clearview, (d) in a position classified by the employer as non-exempt under the FLSA, and (e) who were not paid all overtime compensation owed as a result of Defendants Simcha Hyman, Naftali Zanziper, and/or Clearview improperly excluding certain types of compensation for work performed when calculating the overtime rate of pay.

3.     With respect to Defendant Madisonville Health, the similarly-situated employees the proposed class of similarly-situated employes consists of all employees who, with respect to any one or more workweek for which the regular payday occurred in the last five years (a) worked 40 hours or more in such workweek while (b) employed in Kentucky (c) by Madisonville Health, (d) in a position classified by Madisonville Health as non-exempt under the FLSA, and (e) who were not paid all overtime compensation owed as a result of Defendants improperly excluding certain types of compensation for work performed when calculating the overtime rate of pay.

4.     As a result of Defendants' violations of the FLSA and KWHA, the Court should award the employees their unpaid overtime compensation, liquidated damages in an additional equal amount, and attorney's fees and other litigation expenses.

## II.    Jurisdiction and Venue

5.    This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, including 29 U.S.C. § 216(b).

6.    This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the Kentucky Wages and Hours Act ("KWHA") as they are related to Plaintiff's claims under the FLSA; they form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendants operate a nursing home located in Madisonville, Hopkins County, Kentucky within the District of this Court and Plaintiff worked for Defendants at that facility.

## III.    Parties

8.    Plaintiff was employed by Defendant Madisonville Health working at a nursing home in Madisonville, Kentucky from February 14, 2023 until February 14, 2024.  Plaintiff's consent to join this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit 1.

9.    Throughout her employment with Defendant Madisonville Health, Plaintiff worked for Defendant Madisonville Health in the Commonwealth of Kentucky and her work was governed by the FLSA.

10.    Defendant Madisonville Health is a for-profit Kentucky limited liability company; upon information and belief, Defendant Madisonville Health may be served by service of process on its Registered Agent, Corporate Creations Network Inc., 101 North Seventh Street, Louisville, KY 40202.

11.    During all times relevant, Defendant Madisonville Health was an employer as defined in 29 U.S.C. § 203(d) and an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(s).

12.    Defendant Madisonville Health employs and has employed in the last five years other non-exempt employees in the Commonwealth of Kentucky and, like Plaintiff, deprived those employees of overtime compensation owed under the FLSA and/or KWHA by not paying those employees the correct overtime rate of pay for their overtime work.

13.    Defendants Simcha Hyman and Naftali Zanziper are individuals and, upon information and belief, each have an ownership interest, directly or indirectly in Defendant Madisonville Health.

14.    Defendant Madisonville Health listed as its officers in its filings with the Kentucky Secretary of State Defendants Hyman and Zanziper.

15.    Defendant Clearview is a for-profit Kentucky limited liability company; upon information and belief, Defendant Clearview may be served by service of process on its Registered Agent, Corporate Creations Network Inc., 101 North Seventh Street, Louisville, KY 40202.

16.    Upon information and belief, Defendants Simcha Hyman and Naftali Zanziper each have an ownership interest, directly or indirectly in Clearview.

17.    Upon information and belief, Defendants Simcha Hyman and/or[1] Naftali Zanziper each have (or have had during the last 5 years) ownership interests, directly or indirectly, in numerous other Kentucky for-profit entities that operate nursing homes in Kentucky, including each

---

[1]    Upon information and belief, all of the Kentucky Facilities were at one time owned one-half by Mr. Hyman and one-half by Mr. Zanziper.  Upon information and belief, Mr. Zanziper divested himself of direct ownership of his one-half of some or all of the Kentucky Facilities.  See Affidavits of Hyman and Zanziper, attached hereto as Exhibit 2.

of the following entities, which have the following assumed names, and operate nursing homes facilities located at the following addresses (together with Madisonville Health, the "Kentucky Facilities", and each a "Kentucky Facility"):

| Entity Name | Assumed Name | Facility Address |
| --- | --- | --- |
| Beck Mayfield KY PROPCO, LLC | Mills Nursing & Rehabilitation | 500 Beck Lane, Mayfield, KY 42066 |
| Bedford KY OPCO, LLC | Bedford Springs Health and Rehabilitation | 50 Shepherd Lane, Bedford, KY 40006 |
| Birchwood Nursing and Rehabilitation, LLC | Clinton Place | 106 Padgett Dr., Clinton, KY 42031 |
| Cherokee Park Rehabilitation, LLC | None | 2100 Cherokee Ridge Way, Louisville, KY 40205 |
| Countryside Center for Rehabilitation and Nursing, LLC | None | 47 Margo Avenue, Bardwell, KY 42023 |
| CV Louisville Opco I, LLC | Sycamore Heights and Rehabilitation | 2141 Sycamore Ave., Louisville, KY 40206 |
| Fair Oaks Health and Rehabilitation, LLC | None | 1 Sparks Ave., Jamestown, KY 42629 |
| Farthing Mayfield KY OPCO, LLC | Green Acres Healthcare | 402 W. Farthing St., Mayfield, KY 42066 |
| Fulton Nursing and Rehabilitation, LLC | None | 1004 Holiday Lane, Fulton, KY 42041 |
| Glasgow KY Opco, LLC | Glenview Health and Rehab | 1002 Glenview Dr., Glasgow, KY 42141 |
| Greenville KY, OPCO, LLC | Maple Health and Rehabilitation | 515 Greene Dr., Greenville, KY 42345 |
| Hopkinsville KY OPCO, LLC | Bradford Heights Nursing & Rehabilitation | 950 Highpoint Dr., Hopkinsville, KY 42240 |
| Jeffersontown OPCO, LLC | Jeffersontown Rehabilitation | 3500 Good Samaritan Way, Jeffersontown, KY 40299 |

| Leithchfield KY OPCO, LLC | Spring View Nursing & Rehabilitation | 718 Goodwin Lane, Leitchfield, KY 42754 |
|---|---|---|
| Louisville KY Opco LLC | Oxmoor Health and Rehabilitation | |
| Madisonville Health and Rehabilitation, LLC | None | 419 N. Seminary St., Madisonville, KY 42431 |
| Owensboro KY OPCO, LLC | Chautauqua Health and Rehabilitation | 1205 Leitchfield Rd. Owensboro, KY 42303 |
| Owenton KY OPCO, LLC | Owenton Healthcare and Rehabilitation | 905 Hwy 127 N. Owenton, KY 40359 |
| Paducah Center for Health and Rehabilitation, LLC | Stonecreek Health and Rehabilitation | 4747 Alben Barkley Dr., Paducah, KY 42001 |
| Princeton KY OPCO, LLC | Princeton Nursing & Rehabilitation | 1333 W. Main St., Princeton, KY 42445 |
| Russellville KY OPCO, LLC | Creekwood Nursing & Rehabilitation | 107 Boyles Dr., Russellville, KY 42276 |
| Shelbyville KY Opco, LLC | Crestview Healthcare and Rehabilitation | 1871 Midland Trail, Shelbyville, KY 40065 |
| Westwood Nursing and Rehabilitation, LLC | Barren County Nursing and Rehabilitation | 300 Westwood St., Glasgow, KY 42141 |
| Williamstown KY OPCO, LLC | Grant Healthcare and Rehabilitation | 201 Kimberly Lane, Williamstown, KY 41097 |

18.    Upon information and belief, Defendants Hyman, Zanziper and Clearview control the payroll practices of each Kentucky Facility and are joint employers with the Kentucky Facilities of Plaintiff and the similarly-situated employees employed by the Kentucky Facilities.

19.    The employees working at each Kentucky Facility receive paychecks from that particular Kentucky Facility listing that particular Kentucky Facility as the employer[2]; however, upon information and belief, Defendants Hyman, Naftali and Clearview control the payroll practices of each Kentucky Facility as joint employers with the Kentucky Facility and cause each Kentucky Facility to pay its non-exempt employees a lower overtime rate of pay than required by the FLSA and KWHA by having each Kentucky Facility offer compensation to employees for work performed by those employees, but improperly not consider that compensation in calculating the overtime rate of pay, as described further below.

20.    Therefore, the employees of each Kentucky Facility are similarly-situated to Plaintiff Paulette Wedding with respect to Plaintiff Paulette Wedding's claims against Defendants Hyman, Naftali and Clearview in that, like Paulette Wedding, they are employees of a Kentucky Facility entity that is a joint employer with Defendants Hyman, Naftali and Clearview and were deprived of overtime compensation by common payroll practices Defendants Hyman, Naftali and Clearview enforce at all of the Kentucky Facilities.

---

[2]    Because Plaintiff Paulette Wedding was not employed at any of the Kentucky Facilities other than Madisonville Health, this Complaint does not assert claims against the Kentucky Facilities other than Madisonville Health.  However, claims against others of the Kentucky Facilities may be asserted in an amended complaint upon employees employed by those Kentucky Facilities becoming parties to this action.  Although the Kentucky Facilities other than Madisonville Health are not defendants at this time, this Complaint does seek relief against Defendants Hyman, Naftali and Clearview relating to work performed at the Kentucky Facilities by employees of the Kentucky Facilities because Defendants Hyman, Naftali and Clearview were joint employers with the Kentucky Facilities with respect to that work.

IV.     Facts

**A.     Plaintiff Was Entitled to Overtime Compensation.**

21.     Throughout her employment, Plaintiff worked a position that was non-exempt under the Fair Labor Standards Act.

22.     Specifically, Plaintiff worked at Defendant's nursing home as a Licensed Practical Nurse, caring for residents of the nursing home.

23.     Defendant Madisonville Health paid Plaintiff a base hourly rate for Plaintiff's work for Defendant Madisonville Health; Defendant Madisonville Health did not pay Plaintiff a salary.

24.     Defendant Madisonville Health itself categorized Plaintiff as an employee whose work was non-exempt under the FLSA and KWHA.

25.     When Defendant Madisonville Health credited Plaintiff with having worked more than 40 hours in a workweek, Defendant Madisonville Health would pay Plaintiff for the hours worked a rate of one and one-half times her hourly rate of pay, taking into account certain (but, as discussed below, not all) of her compensation for work performed.

**B.     Defendants Did Not Pay the Correct Overtime Rates of Pay, Depriving Employees of the Overtime Compensation Employees Had Earned for their Overtime Work.**

26.     However, Defendants did not pay overtime rates of pay correctly.

27.     Specifically, Defendants failed to pay overtime compensation because it used an improperly low "regular rate" to calculate the overtime rate of pay, in violation of the FLSA and KWHA.

**1.     The Regular Rate Standards**

28.     Under 29 U.S.C. § 207(e) and 29 C.F.R. § 778.107 *et seq.*, Defendants were required to pay Plaintiff and the similarly-situated employees, for each hour worked in excess of

8

forty in a workweek, "not less than one and one-half times the regular rate at which he is employed."

29.     This "regular rate" is the "keystone" to calculating the appropriate rate of overtime compensation and is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945), *quoting Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944).

30.     The "regular rate" "must be drawn from what happens under the employment contract," and "requires inclusion in the 'regular rate' of 'all remuneration for employment paid to, or on behalf of, the employee' except payments specifically excluded by paragraphs (1) through (7) of that subsection." 29 C.F.R. § 778.108, quoting 29 U.S.C. § 207(e)

31.     "Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates." 29 C.F.R. § 778.115.

32.     Further, where an employer pays bonuses, unless the bonus "qualif[ies] for exclusion from the regular rate as" a "discretionary bonus[], gift[ or] payment[] in the nature of [a] gift[] as defined in 29 U.S.C. § 207(e) and 29 C.F.R. §§ 778.11 through 778.214]," the bonus "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based" to avoid the bonus being treated as "an evasive bookkeeping device." 29 C.F.R. § 778.208.

33.     A bonus is not excludible as "discretionary" unless "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing

the employee to expect such payments….”  29 C.F.R. § 778.211(a).

34.    “If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.”  *Id.* at (b).

35.    “For example, any bonus which is promised to employees upon hiring … would not be excluded from the regular rate under this provision of the Act.”  *Id.* at (c).

36.    “Most attendance bonuses,… bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay.”  *Id.*

37.    Where a bonus is not payable unless an employee remains employed for a particular period of time, and thus the employee's entitlement to the bonus cannot be ascertained until the end of the period, the employer may delay calculating the amount of additional overtime compensation owed until the bonus is in fact earned; however, “[w]hen the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.”  29 C.F.R. § 778.209.

### 2.    Plaintiff's Pay.

38.    Attached hereto as Exhibits 3 are copies of Plaintiff's “paystubs” received relating to her pay for work for Defendant Madisonville Health during her work from February 12, 2023 until January 27, 2024.

39.    Attached hereto as Exhibit 4 is a copy of Plaintiff's “paystub” relating to Plaintiff's pay for Plaintiff's work for Defendants on and after January 28, 2024.

40.     The paystub attached as Exhibit 4 was not in whole or in part payment for any periods Plaintiff worked prior to January 28, 2024, but instead reflected retroactive payment for the period on and after January 28, 2024.

41.     Specifically, Plaintiff's pay for the period January 28, 2024 until February 10, 2024 ordinarily would have been paid on February 16, 2024 had Plaintiff continued to be employed.

42.     Indeed, it was Defendants' general policy to pay employees for the period containing two weeks (from Sunday until Saturday) on the Friday after the end of the period being paid (i.e., on the Friday 6 days after the end of the pay period).

43.     Plaintiff was terminated on February 14, 2024.

44.     Specifically, Plaintiff was placed on suspension on February 11, 2024 for allegedly being rude to a co-worker; thereafter, Carla Benson, Madisonville Health's Director of Nursing, texted with Plaintiff to arrange for Plaintiff to meet with Ms. Benson at 1:00 p.m. on February 14, 2024 (a text message thread between Ms. Benson and Plaintiff relating to this proposed meeting is attached as Exhibit 5); instead of having this meeting, however, Ms. Benson called Plaintiff on February 14, 2024 and told Plaintiff that she was being terminated.

45.     After Plaintiff's termination, Plaintiff received a payment for the period on and after January 28, 2024 (reflected in Exhibit 4), but not until on or about March 1, 2024.

> **3.     Plaintiff and Other Employees Were Promised Sign-On Bonuses That Had To Be Earned Over a Period of Time.**

46.     Defendant Madisonville Health promised Plaintiff at the time she was hired that Plaintiff would be paid a sign-on bonus if Plaintiff worked for Madisonville Health long enough.

47.     Specifically, Defendant Madisonville Health promised that she would be paid a total sign-on bonus of $7,000.00, in stages, if she worked for Defendant Madisonville Health long enough for each stage.

48.     Even more specifically, Defendant Madisonville Health promised Plaintiff would be paid one half of the sign-on bonus if she worked for Defendant Madisonville Health for ninety days, one-quarter of the sign-on bonus if she worked for Defendant Madisonville Health for a total of six months, and the final one-quarter of the sign-on bonus if she worked for Defendant Madisonville Health for a total of one year.

49.     After Plaintiff's termination on February 14, 2024 (the one-year anniversary of her employment with Defendant Madisonville Health, as she had began working for Defendant Madisonville Health on February 14, 2023), Plaintiff texted Carla Benson, Madisonville Health's Director of Nursing, on February 23, 2024, inquiring regarding "my paycheck."[3]

50.     Ms. Benson responded on the same day "[i]f you're talking about your final payout for bonus.  You don't get it."

51.     Attached hereto as Exhibit 6 is a portion of the text conversation containing the texts described above.

> **4.     Defendants Regularly Promised Sign-On Bonuses to Similarly-Situated Employees of the Kentucky Facilities.**

52.     Upon information and belief, Madisonville Health and the other Kentucky Facilities regularly promise sign-on bonuses to non-exempt employees.

53.     For example, attached hereto as Exhibit 7 is a job posting posted on March 14, 2024, in which a $5,000 sign-on bonus is offered for Registered Nurse work "at GREEN ACRES."

54.     One of the Kentucky Facilities, Farthing Mayfield KY Opco, LLC, has an assumed name of Green Acres Healthcare.

---

[3]     Plaintiff did not receive her pay, including her earned overtime compensation, on the normal payday, as discussed further in Paragraphs 39-45 above and Paragraphs 154-158 below.

55.     The job posting attached as Exhibit 7 related to work at Farthing Mayfield KY Opco, LLC's facility at the address listed in Paragraph 17 above.

56.     As another example, attached hereto as Exhibit 8 is a job posting posted on February 12, 2024, in which a $5,000 sign-on bonus is offered for positions at Mills Nursing and Rehabilitation Center.

57.     As another example, attached hereto as Exhibit 9 is a job posting in which a $5,000 sign-on bonus is offered for Licensed Practical Nurse (LPN) and Registered Nurse (RN) positions at Mills Nursing and Rehabilitation Center.

58.     One of the Kentucky Facilities, Beck Mayfield KY PROPCO, LLC, has an assumed name of Mills Nursing & Rehabilitation.

59.     The job postings attached as Exhibits 8 and 9 related to work at Beck Mayfield KY PROPCO, LLC's facility at the address listed in Paragraph 17 above.

60.     As another example, attached hereto as Exhibit 10 is a job posting in which a $5,000 sign-on bonus is offered for Licensed Practical Nurse (LPN) and Registered Nurse (RN) positions at Stonecreek Health and Rehabilitation Center.

61.     One of the Kentucky Facilities, Paducah Center for Health and Rehabilitation, LLC, has an assumed name of Stonecreek Health and Rehabilitation.

62.     The job posting attached as Exhibit 10 related to work at Paducah Center for Health and Rehabilitation, LLC's facility at the address listed in Paragraph 17 above.

63.     Exhibits 11 and 12 are job posting which indicates "sign-on bonus available" for Certified Nursing Assistant (CNA) positions (Exhibit 11) and Licensed Practical Nurse (LPN) positions at Fulton Nursing and Rehabilitation.

64.     Exhibit 13 is a job posting which advertises "Sign on bonuses" for "[a]ny LPN's or

RN's looking for a job" (referring to Licensed Practical Nurse (LPN) and Registered Nurse (RN) positions) at Fulton Nursing & Rehab.

65.     One of the Kentucky Facilities is Fulton Nursing and Rehabilitation, LLC.

66.     The job posting attached as Exhibits 11, 12 and 13 related to work at Fulton Nursing and Rehabilitation, LLC's facility at the address listed in Paragraph 17 above.

67.     As another example, attached hereto as Exhibit 14 is a job posting in which a $1,200 Sign-On Bonus is offered for Certified Nursing Assistant (CNA) positions at Countryside Center for Rehabilitation and Nursing.

68.     As another example, attached hereto as Exhibit 15 is a job posting in which a $3,000.00 Sign-On Bonus is offered for Licensed Practical Nurse (LPN) positions at Countryside Center for Rehabilitation and Nursing.

69.     One of the Kentucky Facilities is Countryside Center for Rehabilitation and Nursing, LLC.

70.     The job postings attached as Exhibits 14 and 15 related to work at Countryside Center for Rehabilitation and Nursing, LLC's facility at the address listed in Paragraph 17 above.

71.     Upon information and belief, the job postings/advertisements attached as Exhibit 7 through 15 were posted by Defendant Clearview; in the alternative, the job postings/advertisements attached as Exhibit 7 through 15 were posted by the applicable Kentucky Facility[4], but following the directions of Defendant Clearview to offer sign-on bonuses.

---

[4]     In other words, Exhibit 7 was posted by Farthing Mayfield KY Opco, LLC, Exhibits 8 and 9 were posted by Beck Mayfield KY PROPCO, LLC, Exhibit 10 was posted by Paducah Center for Health and Rehabilitation, LLC, Exhibit 11, 12 and 13 were posted by Fulton Nursing and Rehabilitation, LLC, and Exhibits 14 and 15 were posted by Countryside Center for Rehabilitation and Nursing, LLC.

> **5.** **The Employees of Kentucky Facilities Were Promised in Advance That They Would Receive the Bonuses, But Only If They Worked For Specified Periods of Time.**

72.     The employees of Kentucky Facilities who were promised sign-on bonuses were not paid the sign-on bonus unconditionally upon beginning employment.

73.     To the contrary, Defendants Hyman, Zanziper and Clearview required the Kentucky Facilities to promise sign-on bonuses, but to also condition the payment of those bonuses on the employee working for the Kentucky Facility for a particular specified period of time.

74.     Upon information and belief, Defendants Hyman, Zanziper and Clearview required the Kentucky Facilities to impose the same conditions relating to the amount of time worked as were imposed with respect to Plaintiff (that the employee must work ninety days to earn half the bonus, a total of six months to earn an additional quarter of the bonus, and a total of one-year to earn the final quarter of the bonus).

75.     Because the bonus was promised to employees in advance, and was earned over a specified period of time, the bonus was not discretionary, and should have been treated as compensation earned by the employee over the period of time it was earned.

76.     That compensation should have been, under 29 U.S.C. § 207 and 29 C.F.R. § 778.211, included in the regular rate used to calculate overtime rates of pay.

77.     Defendants caused the Kentucky Facilities, however, to not include the sign-on bonus compensation in calculating the overtime rate of pay for all workweeks over which the bonus compensation was being earned.

78.     Specifically, Defendants appears to have paid a higher overtime rate of pay in one of the two workweeks of the period for which Plaintiff's paystub reflects payment of portions of her sign-on bonus, see Exhibit 3 at pages 8 and 13.

79. However, Defendants did not at that time pay additional overtime compensation for all of the overtime work Plaintiff had performed during the earlier periods when she was earning the sign-on bonus. *Id.*

80. Indeed, Defendants did not even pay additional overtime compensation relating to the sign-on bonus for the other workweek of the two-workweek pay period for which Plaintiff's paystub reflects payment of portions of her sign-on bonus. *Id.* at 8 ($44.81/hour overtime rate for one workweek for period 5/21/23-6/3/23, compared to $89.00/hour overtime rate for other workweek) and 13 ($45.24/hour overtime rate for one workweek for period 7/30/23 to 8/12/23, compared to $63.32/hour overtime for other workweek).

81. Defendants did not pay to Plaintiff the full overtime compensation owed to Plaintiff as a result of the payment of sign-on bonus compensation.

82. Defendant similarly improperly calculated the overtime premium compensation owed as a result of the payment of sign-on bonus compensation to the similarly-situated employees.

83. Defendant similarly did not pay to the similarly-situated employees who were paid sign-on bonuses the full overtime compensation owed as a result of the payment of sign-on bonus compensation.

### 6. Defendants Improperly Excluded "Mod Comp (15%)" Compensation In Calculating the Overtime Rate of Pay.

84. Defendants told Plaintiff that, if Plaintiff declined Defendant's health insurance benefits, Plaintiff would be paid an additional amount per hour for her work.

85. Specifically, Defendants told Plaintiff that, if Plaintiff declined Defendant's health insurance benefits, Defendants would receive an additional amount per hour equal to 15% of her base rate of pay.

86. Upon information and belief, Defendants have and have had this policy for all of the non-exempt employees of the Kentucky Facilities (and Defendant Madisonville Health has this policy for all non-exempt employees of Madisonville Health).

87. In other words, upon information and belief, if any non-exempt employee of any Kentucky Facility declines to receive health insurance benefits as part of the employment, he or she would receive an additional amount per hour equal to 15% of her base rate of pay.

88. Plaintiff declined health insurance benefits.

89. Accordingly, Defendants paid Plaintiff 15% of her base hourly rate of pay as an hourly rate of pay in addition to Plaintiff's base hourly rate.

90. Defendants reflected this item on a separate line item on Plaintiff's paystub under a line entitled "Mod Comp (15%)."

91. For work prior to September 10, 2023, Defendants did not incorporate Plaintiff's "Mod Comp (15%)" into her regular rate or otherwise pay overtime compensation relating to her "Mod Comp (15%)" compensation.  See Exhibit 3 at 1-5.

92. For example, on her paystub for the period February 26, 2023 through March 11, 2023 (Exhibit 3 at 2), Plaintiff was paid for working a total of 88.73 hours, of which 79.83 were non-overtime hours and 9.36 hours were overtime hours.

93. Defendant Madisonville Health paid Plaintiff $28.00 per hour for the 79.83 non-overtime hours and $4.20 per hour (15% of $28.00) for "Mod Comp (15%)" for these 79.83 hours. *Id.*

94. With respect to the overtime hours, Defendant Madisonville Health paid Plaintiff a higher hourly rate ($44.73 and $44.80 per hour) for Plaintiff's 9.36 hours of overtime work.  *Id.*

95. However, Defendants did not pay a higher rate of compensation for the "Mod Comp

(15%)" compensation for the overtime work. Instead, for the 9.36 hours of overtime work during the period February 26, 2023 through March 11, Defendant Madisonville Health paid the same $4.20 per hour for "Mod Comp (15%)" as it had paid for the 79.83 hours of non-overtime work. *Id.*

96.     For work after September 10, 2023, Defendant Madisonville Health began including a line entitled "Mod Comp OT (15%)" which showed the number of overtime hours, and paid for those hours at 1.5 times the base "Mod Comp (15%)" hourly rate, acknowledging that the "Mod Comp (15%)" compensation was for work performed and should be included in calculating the appropriate premium for overtime work. See Exhibit 3 beginning at 16.

97.     However, despite being aware that Defendants had not properly paid the "Mod Comp (15%)" compensation for work prior to September 10, 2023, Defendants did nothing to pay the unpaid overtime compensation owed as a result of Defendants improperly excluding the "Mod Comp (15%)" compensation for work prior to September 10, 2023.

98.     Upon information and belief, Defendants paid "Mod Comp (15%)" compensation to other similarly-situated employees for work performed, but similarly failed to include for work prior to September 10, 2023 this compensation in calculating the overtime rate of pay, and therefore similarly underpaid the amount of overtime compensation due to those employees.

### 7.     Defendants Improperly Excluded Other Compensation Paid for Work Performed in Calculating the Overtime Rate of Pay.

99.     Upon information and belief, Defendants failed in other ways to include all of the compensation paid to Plaintiff and the similarly-situated employees for work performed in calculating the overtime rate of pay.

100.     Plaintiff has set forth above specific manners in which Defendants did not correctly follow the "regular rate" principles that the FLSA and KWHA require employers to follow in

determining the correct overtime rate of pay; however, to be clear, Plaintiff alleges herein generally that Defendants did not follow those principles, and seeks all unpaid overtime compensation which Defendants should have paid but did not pay, whether or not the failure arose from one of the more specific manners described above.

### C.    Defendant's Violations of the FLSA Were Willful.

101.    Upon information and belief, Defendants were at all times conscious and aware that they were not not paying overtime compensation correctly; their violations of the FLSA were willful.

102.    For instance, upon information and belief, Defendants changed the manner in which they paid overtime compensation in an attempt to avoid continuing to accrue liability to employees for the practice of paying "Mod Comp (15%)" compensation for hours worked but not paying overtime premiums associated with this compensation, and Defendants were fully aware at the time of this change that it had underpaid employees by, before the change, paying overtime compensation at one-and-one-half times the lower of multiple non-overtime rates.

103.    However, Defendants did nothing to pay the employees the overtime compensation Defendants knew the employees were owed; Defendants instead made a decision to retain the illegal profits it had stolen by underpaying the employees of the Kentucky Facilities.

### D.    The FLSA Applies to the Work of the Employees.

104.    The work of Plaintiff and the similarly-situated employees of operating the Kentucky Facilities' nursing homes involved interstate commerce, including but not limited to regularly completing medical record documentation to ensure payments to Defendants (and/or the applicable Kentucky Facility) involving multiple states, and Defendants are therefore subject to the FLSA with respect to Plaintiff and the similarly-situated employees.

105.     In the alternative, each Kentucky Facility is subject to the FLSA with respect to all employees of Defendant.

106.     Upon information and belief, at all relevant times, each Kentucky Facility's annual gross volume of sales made or business done has exceeded $500,000.00.

107.     Further, each Kentucky Facility employs two or more employees who, as part of their work, handle goods and/or materials that have been transported in interstate commerce.

108.     Accordingly, each Kentucky Facility meets the definition of an enterprise engaged in commerce or in the production of goods for commerce under 29 U.S.C. § 203(s).

109.     Upon information and belief, Defendants Clearview, Hyman and Zanziper were each a joint employer with each Kentucky Facility, and controlled the Kentucky Facilities' payment and nonpayment of overtime compensation to the Kentucky Facilities' employees.

110.     For instance, attached hereto as Exhibit 16 are emails amongst these defendants relating to employment at various Kentucky Facilities, including emails relating to Facility Daily Labor reports.

**V.     Collective Action Allegations Relating to Defendant's Violation of the FLSA.**

111.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and other similarly-situated employees.

112.     Plaintiff anticipates filing a motion for notice to the similarly-situated employees, and will more fully define the requested scope of the notice and proposed collective in that motion.

113.     Plaintiff further reserves the right to define and/or re-define the proposed collective group prior to the Court's ruling at the second (post-discovery) stage of determining the collective group of similarly-situated employees under the FLSA, as may be warranted, appropriate and/or necessary.

114.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in

29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime compensation for hours worked over forty (40) during the workweek.

115.    Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common employee compensation, timekeeping and payroll practices, including:

      a.    whether Defendants have engaged in a pattern or practice of failing to include all compensation earned for work performed in calculating the overtime rate of pay, in violation of the FLSA;

      b.    whether the conduct of Defendants was willful;

      c.    whether Plaintiff and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

116.    Defendants failed to compensate Plaintiff and the similarly-situated employees overtime compensation at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

117.    The claims of Plaintiff are similar to those of the members of the proposed collective group, in that Plaintiff has been subject to the same conduct as members of the proposed collective group and Plaintiff's claims are based on the same legal theory as members of the collective group.

118.    The Collective members are victims of Defendant's unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay and employment practices.

119.    Defendant's failure to pay overtime compensation as required by the FLSA results

from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff is similarly situated to the members of the Collective.

120.    The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records.

121.    The similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail, email, text messaging and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.[5]

### VI.    Class Action Allegations Relating to Defendant's Violation of State Law Pursuant to Federal Rule of Civil Procedure 23.

122.    Plaintiff brings Counts II of this lawsuit individually and as a class action pursuant to Fed. R. Civ. P. 23 under the Kentucky Wages and Hours Act on behalf of herself and all similarly-situated current and former employees of any of the Kentucky Facilities who was not paid the full compensation owed for such employee's overtime work which should have been paid within the last five years, because Defendants failed to pay the full, correct overtime rates of pay.

123.    Plaintiff is a member of the class she seeks to represent.

124.    Defendants failed to pay Plaintiff and the members of the class she seeks to represent wages for work performed, as described herein, in violation of the KWHA.

---

[5]    To be very clear and ensure that Defendants are aware, with respect to Plaintiff and individuals who opt-in to this action and who incur damages after the filing of this action as a result of Defendants continuing its illegal practices after the filing of this Complaint, (a) such damages will be sought in this action and (b) any such continuation of the illegal practices by Defendant after the filing of the Complaint will be used by Plaintiff as further evidence of Defendants' willfulness and lack of good faith in violating the FLSA prior to the filing of this action.

125.    Under the KWHA, employers are required to pay wages to employees, including overtime compensation to non-exempt employees for overtime work performed by such employees.

126.    As Plaintiff and the similarly-situated employees were non-exempt, Defendant's refusal to pay Plaintiff and Class Members overtime compensation at a rate of compensation 1.5 the regular rate of pay (taking into account all compensation for work performed) violated the KWHA.

127.    Upon information and belief, the Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

128.    All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all members of the Rule 23 Class share common questions, including whether, as a result of failing to properly calculate the "regular rate" of pay, Defendants failed to pay employees wages (including overtime compensation) owed.

129.    Plaintiff's claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality.  Defendant's failure to pay Plaintiff overtime compensation was not the result of any circumstances specific to the Plaintiff.  Rather, it arose from Defendant's common pay policies of not paying the full amount of overtime compensation owed, which Defendants applied generally to the employees of the Kentucky Facilities, despite the fact that Plaintiff and the similarly-situated employees were non-exempt and entitled to overtime pay.

130.    Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

131.    Plaintiff has retained competent counsel experienced in representing classes of employees in lawsuits against their employers alleging failure to pay statutorily required overtime compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

132.    By failing to pay Plaintiff and Class Members the full amount of overtime compensation earned, Defendants have created the circumstance under which questions of law and fact common to the Rule 23 Class members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).[6]

## COUNT I

### Violation of the FLSA: Failure to Properly Pay Overtime Compensation
### (On Behalf of Plaintiff and the FLSA Collective)

133.    All previous paragraphs are incorporated as though fully set forth herein.

134.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate.  *See* 29 U.S.C. § 207(a)(1).

135.    Defendants are subject to the wage requirements of the FLSA because each Kentucky Facility is an employer under 29 U.S.C. § 203(d) and Defendants Hyman, Zanziper and Clearview are joint employers with each Kentucky Facility.

136.    At all relevant times, each Kentucky Facility was an "employer" engaged in

---

[6]    To be very clear and ensure that Defendants are aware, with respect to any members of the proposed Rule 23 class who incur damages after the filing of this action as a result of Defendants continuing its illegal practices after the filing of this Complaint, (a) such damages will be sought in this action and (b) any such continuation of the illegal practices by Defendant after the filing of the Complaint will be used by Plaintiff as further evidence of Defendants' willfulness and lack of good faith in violating the KWHA prior to the filing of this action.

interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

137.   During all relevant times, Plaintiff and the members of the FLSA Collective were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

138.   During all relevant times, Plaintiff and the Collective Members were not exempt from the requirements of the FLSA.

139.   Plaintiff and the Collective Members each worked more than forty (40) hours in one or more workweeks without full overtime compensation and are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

140.   Defendants knowingly failed to properly compensate Plaintiff and the Collective Members by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

141.   In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

142.   Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II

### VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ.* BY NONPAYMENT OF WAGES

### (On Behalf of Plaintiff and proposed Rule 23 Class)

143.   All previous paragraphs are incorporated as though fully set forth herein.

144.    Plaintiff brings this claim on behalf of all members of the proposed Rule 23 Class.

145.    Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq.*

146.    KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

147.    During all times material to this complaint, each Kentucky Facility was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d), and Hyman, Zanziper and Clearview were each a joint employer of each Kentucky Facility.

148.    During all times material to this complaint Plaintiff and the Rule 23 Class were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

149.    Defendants were not exempt from providing Plaintiff and Class Members the KWHA's overtime benefits because the employees do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

150.    Defendants violated the KWHA with respect to Plaintiff and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked in excess of forty per workweek at one and one-half their "regular rate" of pay.

151.    In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

152.    Pursuant to KY. REV. STAT. ANN. § 337.385, Defendants, because they failed to pay employees the required amount of wages and overtime at the statutory rate, should be found liable to the employees not only for the unpaid wages, but also for liquidated damages in an amount

equal to the amount of unpaid wages.

153.    Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiff and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## COUNT III
## VIOLATION OF FLSA BY LATE PAYMENT OF OVERTIME COMPENSATION
### (Plaintiff Wedding only)

154.    Upon information and belief, Plaintiff performed overtime work in the last pay period for which she was compensated.

155.    However, Defendant Madisonville Health did not pay Plaintiff at the regular pay day for this overtime work.

156.    Instead, Defendant Madisonville Health delayed paying Plaintiff for her overtime worked in her last pay period.

157.    Overtime compensation owed under the FLSA is required to be paid at the next regular payday when non-overtime compensation is to be paid; failure to pay overtime compensation timely is a violation of the FLSA for which liquidated damages should be awarded, even if the overtime compensation is later paid.

158.    Judgment should be entered in favor of Plaintiff against Defendant Madisonville Health for liquidated damages in an amount equal to the overtime compensation Defendant Madisonville Health paid for its final paycheck to Plaintiff, plus Plaintiff's attorney's fees associated with this claim.

**COUNT IV**
**Nonpayment of Remainder of Sign-On Bonus**
**(Plaintiff Wedding only)**

159.   Defendant Madisonville Health promised Plaintiff a sign-on bonus if she remained employed by Defendant Madisonville Health for one year.

160.   Plaintiff remained employed by Defendant for one year.

161.   However, Defendant Madisonville Health refused to pay Plaintiff the remainder of the sign-on bonus owed.

162.   Defendant's refusal to pay the remainder of the sign-on bonus owed is a breach of contract and non-payment of wages owed under the Kentucky Wages and Hours Act.

163.   Judgment should be entered in favor of Plaintiff against Defendant Madisonville Health for the remainder of the sign-on bonus owed, liquidated damages under the Kentucky Wages and Hours Act, and attorney's fees associated with this claim under the Kentucky Wages and Hours Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

a.     The issuance of process, and the bringing of Defendants before the Court;

b.     An order directing prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members (Plaintiff will file a motion more particularly describing the relief sought);

c.     An order after Plaintiff is provided with an opportunity for discovery certifying under Rule 23 a class of similarly-situated employees whose rights were violated by Defendants under state law, and thereafter a judgment granting the class all relief available under applicable state law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

d.     A jury trial on all issues of fact;

e.     A judgment against Defendants in favor of Plaintiff, the members of the FLSA Collective and/or the Rule 23 Class for unpaid overtime compensation, to the fullest extent permitted under the law;

f.     A judgment against Defendants in favor of Plaintiff, the members of the FLSA Collective and/or the Rule 23 Class for liquidated damages to the fullest extent permitted under the law;

g.     A judgment against Defendants in favor of Plaintiff, the members of the FLSA Collective and/or the Rule 23 for litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h.     Such other and further relief to which Plaintiff, the FLSA Collective and/or the Rule 23 Class is entitled or which this Court otherwise deems just and proper.


Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*