UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00044-BJB-HBB

PAULETTE WEDDING, *individually*                                 **PLAINTIFF**
*and on behalf of those similarly situated*

VS.

MADISONVILLE HEALTH AND                               **DEFENDANTS**
REHABILITATION LLC, et al.

## MEMORANDUM OPINION
## AND ORDER

Before the Court is the motion of Plaintiff Paulette Wedding to compel responses to subpoenas served on 23 non-party business entities (DN 17).  The recipients of the subpoenas[1] have filed a joint Response at DN 26, and Wedding has filed a Reply at DN 31.

### Nature of the Case

Wedding filed her Complaint on April 25, 2024 (DN 1).  She asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Kentucky Wages and Hours Act, KRS § 337.275 *et seq.* (*Id.* at p. 1).  She asserts her claims individually, and as Class and Collective Actions (*Id.* at pp. 1-2, 24-28).

---

[1] Beck Mayfield KY PROPCO, LLC; Bedford KY OPCO, LLC; Birchwood Nursing and Rehabilitation, LLC; Cherokee Park Rehabilitation, LLC; Countryside Center for Rehabilitation and Nursing, LLC; CV Louisville Opco I, LLC; Fair Oaks Health and Rehabilitation, LLC; Farthing Mayfield KY OPCO, LLC; Fulton Nursing and Rehabilitation, LLC; Glasgow KY Opco, LLC; Greenville KY, OPCO, LLC; Hopkinsville KY OPCO, LLC; Jeffersontown OPCO, LLC; Leitchfield KY OPCO, LLC; Louisville KY Opco LLC; Owensboro KY OPCO, LLC; Owenton KY OPCO, LLC; Paducah Center for Health and Rehabilitation, LLC; Princeton KY OPCO, LLC; Russellville KY OPCO, LLC; Shelbyville KY Opco, LLC; Westwood Nursing and Rehabilitation, LLC; and Williamstown KY OPCO, LLC.

Wedding alleges in her Complaint that she was employed at Defendant Madisonville Health and Rehabilitation LLC ("Madisonville Health"), a nursing home, from February 14, 2023, to February 14, 2024 (*Id.* at p. 3).  She further alleges that Defendants Simcha Hyman and Naftali Zanziper have or had ownership interests in Madisonville Health (*Id.* at p. 4).  She further alleges that they also have or had ownership interests in Defendant Clearview Health Management KY LLC ("Clearview"), and that Hyman, Zanziper and Clearview control the payroll practices of Madisonville Health (*Id.* at pp. 4, 6).

She alleges she was not paid overtime benefits to which she was legally entitled, in that her sign-on bonus was not included when her overtime compensation was calculated (*Id.* at pp. 11-12).  Additionally, she claims that, because she did not elect to receive employer-provided health insurance benefits, she was paid additional compensation referred to as "Mod Comp (15%)", but this also was not included when her overtime compensation was calculated (*Id.* at pp. 16-18).

Relevant to the motion at hand, Wedding also alleged in her Complaint that Defendants Hyman and/or Zanziper have or had direct or indirect ownership interests in 23 other similar business entities located in Kentucky (*Id.* at pp. 4-6).  She further alleges that Defendants Hyman, Zanziper and Clearview "control the payroll practices of each Kentucky Facility and are joint employers with the Kentucky Facilities of Plaintiff and the similarly-situated employees employed by the Kentucky Facilities." (*Id.* at p. 6).  She believes employees at these facilities have been similarly short-changed in overtime compensation calculations (*Id.* at p. 7).

Wedding issued subpoenas to the 23 non-party entities identified in her Complaint (DN 17, pp. 3-4).  Her subpoenas sought documents subsequent to April 25, 2019, related to sign-on bonuses paid to employees and additional compensation paid to employees who declined health insurance coverage (*Id.* at p.4; DN 17-2, pp. 3-4).  The subpoenas further requested paystubs for

any such employee and any related spreadsheets or other data, as well as documents reflecting the employees' name and contact information (DN 17, p. 4; DN 17-2, pp. 3-4).  Further, the subpoenas sought documentation of any ownership interest the Defendants had in the entity (DN 17, p. 4; DN 17-2, pp. 3-4).  Wedding represents that she received responses from each of the subpoenaed entities setting forth identical objections to each request for documents:

> The request is overly broad, vague, and seeks information that is irrelevant to the suit as detailed in the attached Complaint. Furthermore, the request is not proportional to the needs of the case and places a burden on Westwood Nursing and Rehabilitation, LLC that outweighs any likely benefit.
> The request is unduly burdensome and the cost of compliance with such a request will impose an undue expense on Westwood Nursing and Rehabilitation, LLC.
> The request calls for discovery that is duplicative of documents that will be obtained from the parties to the litigation.
> The subpoena does not allow a reasonable time to comply with the wide breadth of discovery requested.
> Depending on the interpretation of the vague and overly broad request, the request calls for discovery of documents that are otherwise privileged, confidential, proprietary, or contain sensitive information.
> Depending on the interpretation of the vague and overly broad request, the request calls for discovery of documents that are otherwise privileged, confidential, proprietary, or contain sensitive information.

(DN 17, p. 4; DN 17-4, p. 2).  She brings the present motion to compel the non-party entities' provision of the documents identified in the subpoenas.

Discussion

The business entities challenge Wedding's subpoenas on two fronts.  Substantively, they claim that Wedding has no personal interest in the information sought, and the subpoenas represent a fishing expedition (DN 26, pp. 2, 4, 7-9).  The entities also raise a number of procedural challenges to Wedding's subpoenas and motion to compel (*Id.* at pp. 5-7, 10-14).

Before considering the entities' objections, the Court must address Wedding's argument that only those objections included in the letters from their counsel as quoted above may be considered, and the Court should disregard any additional objections raised in their Response to

3

her motion.  She cites *Boodram v. Coomes* for the general proposition that "[t]he failure to timely serve written objections to a subpoena typically constitutes a waiver of the objections."  No. 1:12-CV-00057-JHM, 2016 U.S. Dist. LEXIS 197323, at *9 (W.D. Ky. Jan. 5, 2016).  Specifically, Fed. R. Civ. P. 45(d)(2)(B) requires any objections to a subpoena to "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Wedding does not contend that the entities' objections were not timely served,[2] rather she extrapolates that only those objections specifically stated are preserved (DN 31, p. 3).  However, she provides no authority supporting this interpretation of Rule 45(d)(2)(B).

The undersigned's research has disclosed some support for Wedding's argument.  In *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, the Second Circuit held that "[w]e believe that Rule 45(c)(2)(B)[3] does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'"  151 F.3d 75, 81 (2nd Cir. 1998); *see also Top Jet Enters. V. Kulowiec*, No. 21-MC-789 (RA) (KHP), 2022 U.S. Dist. LEXIS 17314, at *12 (S.D.N.Y. Jan. 31, 2022) (citing *DG Creditor Corp.*).  The Northern District of Texas has held that a non-party responding to a subpoena under Rule 45 is subject to the same objection specificity required of a party responding to a request for production of documents under Rule 34.  *See MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018).  However, the undersigned has located no controlling or advisory authority within the Sixth Circuit.  Consequently, the undersigned turns to the pertinent language of Rule 45(d)(2)(B):

> Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the

---

[2] *See, e.g.*, the letter at DN 17-4, dated July 5, 2024, in which Westwood Nursing and Rehabilitation, LLC's counsel wrote to Wedding's counsel objecting to the subpoena and referencing a subpoena service date of June 20, 2024, and a compliance date of July 22, 2024.  Allowing for the 4th of July holiday, the objection was served within 14 days of service of the subpoena.

[3] Now Fed. R. Civ. P. 45(d)(2)(b).

> materials or to inspecting the premises—or to producing electronically stored
> information in the form or forms requested. The objection must be served before
> the earlier of the time specified for compliance or 14 days after the subpoena is
> served.

The Rule simply requires the provision of "a written objection" to the subpoena request.  In

contrast, in responding to a request for production of documents, Rule 34 mandates that a party

must "state with specificity the grounds for objecting to the request, including the reasons." FED.

R. CIV. P. 34(b)(2)(B).  Consequently, the undersigned disagrees with the position of the Northern

District of Texas in *MetroPCS*.

Rules 34 and 45 impose different objection specificity obligations.  A non-party asserting

an objection may be doing so without the benefit of counsel.  Nor does the undersigned believe

that asserting additional objections in a response to a motion to compel is an attempt to game the

system.  The purpose of an objection to a subpoena is to both satisfy the recipient's obligation to

respond to the subpoena and place the requesting party on notice so that the substance of the

objection can resolved through a motion to compel under Rule 45(d)(2)(B)(i).  Consequently, the

Court rejects Wedding's argument that it should only consider the specific objections the entities

set forth in their objection letters.

Consideration turns next to the entities' substantive argument that Wedding is not entitled

to the information she seeks.  The entities argue that Wedding's belief that the Defendants have

control over the entities' payroll practices, or that the entities' employees are similarly situated to

Wedding, is based upon speculation and fails to demonstrate that there is a strong likelihood that

they are similarly situated (DN 26, p. 9).  They argue:

> Plaintiff's *express motive* for subpoenaing the other facilities is to discover
> otherwise unknown plaintiffs to solicit to join her lawsuit.  This, in and of itself,
> demonstrates why her subpoenas should not be enforced because Plaintiff *admits*
> her subpoenas are nothing more than a fishing expedition.  She cursorily attempts
> to assert a speculation that wage and hour violations might have occurred at these

other facilities, but there is no plausible factual basis for that belief – certainly not the few social media postings on which she attempts to heap unmerited significance.  Regardless, there is no reason to believe that the employees of twenty-three unrelated non-parties are similarly situated to Plaintiff; the only identified commonality among the Subpoenaed Entities is that they operate nursing home facilities and might have common ownership.  Plaintiff makes no specific allegation that any individual employee of any Subpoenaed Entity has suffered similar alleged under-compensation.

(*Id.*) (citation omitted) (emphasis in original).

Typically, a Plaintiff may not utilize discovery as a means of investigating whether additional claims may be available.  *Papineau v. Brake Supply Co.*, No. 4:18-CV-00168-BJB-HBB, 2020 U.S. Dist. LEXIS 231292, at *14 (W.D. Ky. Dec. 9, 2020).  A FLSA case, however, does not adhere to the typical rule that a plaintiff may only pursue his or her own claim and not the claims of others.  "The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees.  Employees can sue for alleged violations of those mandates on 'behalf of . . . themselves and other employees similarly situated.'"  *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (citations omitted).  To become parties to a FLSA collective action, other employees must affirmatively consent to joinder (*Id.*).  The joining employees must be similarly situated, in that they "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original" plaintiff.  *Id.* at 1010.  To effectuate the goals of the FLSA, district courts are empowered to facilitate notice of the suit to potential plaintiffs.  *Id.* at 1007.  Following receipt of notice, employees who opt in become parties only after the district court conclusively determines that they are, in fact, similarly situated to the original plaintiff.  *McClurg v. Dallas Jones Enters.*, No. 4:20-CV-201-RGJ, 2023 U.S. Dist. LEXIS 220873, at *7-8 (W.D. Ky. Dec. 12, 2023).  The Court's facilitation of notice must not "in form or in function" resemble a solicitation of claims.  *Clark*, 68 F.4th at 1010 (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 174 (1989)).  "To the extent

practicable, therefore, court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Id.*

In order to procure issuance of notice to other potential employee plaintiffs, the Plaintiff must demonstrate a "strong likelihood" that they are similarly situated.   As the Sixth Circuit explained:

> [W]e hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves.   That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance.   The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances.

*Id.* at p. 1011 (citation omitted).   Where plaintiffs in a FLSA case move for court-approved notice, "a district court may promptly initiate discovery relevant to the motion, including, if necessary, by 'court order.'"   *Id.* (citing FED. R. CIV. P. 26(d)(1)).   Consequently, the FLSA permits a plaintiff to engage in a limited amount of fishing to determine the existence of other similarly situated employees to whom notice of the litigation should be provided.   Employees at subsidiaries or related entities may be eligible to join a FLSA action where there is a joint employment.   *See Murphy v. Kettering Adventist Healthcare*, No. 3:23-CV-69, 2023 U.S. Dist. LEXIS 203648, at *11-12 (S.D. Ohio Nov. 14, 2023).

Here, the entities contend that Wedding has provided no more than speculation that they are related to the named defendants in the case, and this is insufficient to justify allowing discovery. However, Wedding has pointed to the entities' use of a similar business logo, job listings which include similar sign-on bonuses and "Mod Comp 15%" benefits, and e-mails suggesting Defendants' involvement in entity wage issues.   Wedding supports her motion with records from the Kentucky Secretary of State showing that Hyman and Zanziper are listed as an organizer,

manager or member of each of the entities (DN 33-1 through DN 33-25).  Curiously, in response

to Wedding's Complaint allegations that Hyman and Zanziper each had, or had during the last five

years, ownership interests, directly or indirectly, in the entities (DN 1, ¶ 17), the Defendants

responded in both their Answer and Amended Answer that they "were without sufficient

knowledge or belief sufficient to form a belief as to the truth of the allegations" and therefore

denied them (DN 10, ¶ 17; DN 12, ¶ 17).  There is a clear question of fact in this regard.  Whether

a defendant is a joint employer is a merits-based argument to be addressed after discovery.

*Murphy*, 2023 U.S. Dist. LEXIS 203648 at *11-12.

> However, the FLSA license to fish is not without limitation.
>
> District courts may allow discovery to determine which, if any, additional employees are similarly situated and should receive notice.  It is the district court's responsibility as the notice gatekeeper to balance the original Plaintiff's discovery needs with the potential for misuse of the collective action device to strongarm defendants into settlement or permit misleading communications to potential plaintiffs.

*Stewart v. Epitec, Inc.*, No. 2:22-cv-12857, 2024 U.S. Dist. LEXIS 4515, at *9-10 (E.D. Mich. Jan.

9, 2024) (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170-71 (1989)).  Here, Wedding's

subpoenas seek a wide-range of documentation related to sign-on bonuses and Mod Comp 15%

benefits, including advertisements for job positions referencing the compensations, policies

regarding the compensations, documents between the entities and employees relating to the

compensations, documents regarding lawsuits, arbitrations or other legal proceedings related to

the compensations, and communications about the compensations between the entities and the

named Defendants (*See* DN 17-2, p. 230).  Wedding also seeks information about payments to

employees, including paystubs, contact information about the employees and documentation of

any ownership interest held in the entity by the named Defendants and its relationship with

Clearview.  (*See id.* at pp. 230-31).

The breadth of Wedding's subpoena is cause for concern.  While couched in terms of the burden of production imposed on the entities, Wedding has anticipated the Court's concern and has suggested a compromise in a footnote to her Reply:

> To the extent the Court believes that, to minimize burden, production should be compelled in stages, Plaintiff requests that the Court first order production of documents response to Subpoena Exhibit A items 8 (agreements with Clearview), 1(B) and 3(B) (policies regarding sign in bonus and for-declining-health-insurance compensation), 2 and 4 (paystubs of employees who received these types of compensation during the period they were receiving them), 1(C) and 3(C) (documents between Kentucky Facilities and employees relating to these types of compensation, including agreements like the one at Page ID # 233), and 5 (contact information of these employees), and then, after production of these items, allow the briefing of whether there is an undue burden relating to the remaining items if Plaintiff and the Kentucky Facilities continue to disagree.

(DN 31, p. 9 n.20).   "Discovery as to both timekeeping and compensation is essential in determining whether other employees are similarly situated."  *Springer v. Kirchhoff Auto. U.S., Inc.*, No. 2:23-cv-10350, 2024 U.S. Dist. LEXIS 5344, at *12-13 (E.D. Mich. Jan. 10, 2024). Moreover, employers are required by federal law to maintain records identifying employees' wages and hours.  *Berner v. Pharmerica Logistics Servs. LLC*, No. 3:23-CV-00142-CRS, 2023 U.S. Dist. LEXIS 150736, at *6 (W.D. Ky. Aug. 28, 2023).   Contact information for other employees, however, presents a different problem.   "[T]he practical effect of permitting pre-notification contact with Defendant's employees is that they will receive notice of this lawsuit from Plaintiff's counsel.  'And notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own.'"  *Duncan v. Magna Seating of Am., Inc.*, No. 2:22-cv-1270, 2024 U.S. Dist. LEXIS 85457, at *12-13 (E.D Mich. May 10, 2024) (quoting *Clark*, 68 F.4th at 1010).  "*Clark* does not permit the discovery of the contact information of potential plaintiffs before a showing that there is a 'strong likelihood' that the potential plaintiffs are similarly situated to the Plaintiff."  *Springer*, 2024 U.S. Dist. LEXIS 5344

at *13.  The undersigned concludes that Wedding's proposed limitation on the initial scope of information sought in their subpoenas, with the exception of employee contact information, strikes a balance between providing her the information necessary to form a preliminary opinion on whether other employees are similarly situated and protecting the entities' employees from inappropriate notice.

Having thus addressed Wedding's entitlement to discovery at this phase in the case and delineated the initial parameters, the Court will move next to the entities' procedural objections to the subpoenas.  Prefatory to this examination, the Court notes Wedding's argument that it should disregard the entities' objections set forth in their letters to her counsel as mere boilerplate.  As the Eastern District of Kentucky has noted

> "A party objecting to a discovery request must particularly state the objection grounds; a boilerplate objection has no legal effect."  *Davis v. American Highwall Mining, LLC*, No. 6:19-cv-96, 570 F. Supp. 3d 491, 2020 U.S. Dist. LEXIS 166579, 2020 WL 5494520 (E.D. Ky. Sept. 11, 2020) (collecting several authorities in support).  *See also See* [*sic*] *Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 U.S. Dist. LEXIS 5068, 2018 WL 372700, at * 4 (E.D. Mich. Jan. 11, 2018) ("Defendants' 'objections' to these discovery requests are the typical boilerplate objections known and detested by courts and commentators—and receiving parties—around the nation.").  The Court will only evaluate objections as specifically raised with the specific requests.  Stated conversely, the Court will ignore general, boilerplate objections meant to apply broadly without context to each request.

*Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 661 (E.D. Ky. 2022).  Despite the entities' argument to the contrary, the objections appear to be of the generalized "kitchen sink" variety which are the hallmark of boilerplate objections, particularly since the entities do not advance all of them in their Response.  Nonetheless, the Court will consider all objections.

1.   Only the Subpoena issued to Westwood Nursing is before the Court.

Wedding only attached to her motion the subpoena issued to Westwood as an example of the subpoenas she served upon the entities.  The entities argue that, for this reason, only that particular

subpoena is before the Court (DN 26, p. 5-6). They contend, without citation to authority, that this limits the Court's ability to enforce the subpoenas to that particular one (*Id.*). The entities do not dispute that they were served with identical subpoenas (*Id.*). All of the entities appear before the Court by way of their Response in opposition (DN 26). Wedding has filed as exhibits to her Reply copies of the subpoenas served on all of the entities (DN 32). The Court concludes that all of the subpoenas are properly before the Court for consideration.

2. <u>There is no proof in the record that Wedding effected proper service on the entities.</u>

The entities argue that Wedding's motion lacks proof that the subpoenas were served upon them (DN 26, pp. 7-8). Wedding has filed as exhibits to her Reply proofs of service by her attorney (DN 32). Subpoenas may be served by a party's attorney, as Rule 45 only prohibits service by an individual younger than 18 or by a party, and an attorney is not a party to the action. *United States v. City of Houston*, No. H-03-03713, 2006 U.S. Dist. LEXIS 98487, at *1-2 (S.D. Tex. July 5, 2006).

3. <u>There is no proof in the record that the subpoenas comply with limitations on place of compliance.</u>

The entities note that Fed. R. Civ. P. 45(c)(2)(A) restricts the obligation to respond to a subpoena to a place within 100 miles of where the person resides, is employed or regularly transacts business (DN 26, p. 6-7). They contend there is no proof in the record that the subpoenas comply with the geographic limitation on production (*Id.*). Wedding responds by noting that the subpoenas advised the recipients that "you may produce the requested documents electronically..." (*See e.g.,* DN 17-2 at p. 4). She argues that the 100-mile production rule is not applicable to instances where production may be made in this manner (DN 31, p. 11-12). She cites in support *Dyno Nobel, Inc. v. Johnson,* 586 F. Supp. 3d 657, 661-662 (*Id.* at p.11 n.22). *Dyno Nobel* observed that there were lines of cases both exempting the geographical limitation and enforcing

11

it when electronic production was an option.  *Id.*  Ultimately *Dyno Nobel* elected not to pick a side

and instead exercised its power under Fed. R. Civ. P. 45(d)(3)(A)(ii) to modify the subpoena and

selected a compromise location for production.  *Id.* at 662-663.

This Court likewise need not address the 100-mile limitation issue because, while the entities

complain that there is no proof in the record that the subpoenas satisfy the geographic limitation,

they offer no proof, nor even argument, that they are *not* within the 100-mile scope for production

(*See* DN 26, p. 6).  In the context of a motion to quash a subpoena, a non-party bears the burden

of proof in opposing production.  *Barnett-Morgan v. Inverness Techs., Inc.*, No. 3:22-CV-00301-

DJH-CHL, 2024 U.S. Dist. LEXIS 134244, at *6 (W.D. Ky. July 30, 2024).  The burden includes

establishing that the non-party does not reside or regularly transact business within 100-miles of

the place of production.  *See Sec'y of Labor v. Valley Wide Plastering Constr. Inc.*, No. CV-18-

04756-PHX-GMS, 2022 U.S. Dist. LEXIS 55595, at *3 (D. Ariz. Mar. 28, 2022); *Corrales v.

Castillo*, No. 2:07-cv-00141-LRH-LRL, 2008 U.S. Dist. LEXIS 142381, at *5 (D. Nev. Feb. 12,

2008).  Although the present motion is one by Wedding to compel production, rather than one by

the entities to quash enforcement, the undersigned discerns no reason why, in opposing the

subpoenas on the grounds of geographical limitation, the entities should not bear the burden of

establishing they do not satisfy any of the criteria under the Rule.  *See Johnson v. Petsmart, Inc.*,

No. 6:06-cv-1716-Orl-31UAM, 2007 U.S. Dist. LEXIS 73567, at *4 (M.D. Fla. Oct. 2, 2007)

(burden shifts to subpoenaed party if it raises any objections after party moving to compel

establishes a *prima facie* compliance with Rule 45).

4. <u>There is no proof that the subpoenas provided the required notice of protections of the person subject to the subpoena.</u>

Rule 45 mandates that a subpoena include information about the recipient's obligations and

rights in providing a response.  FED. R. CIV. P. 45.  Specifically, Rule 45(a)(1)(A)(iv) requires that

the text of sections (d) and (e) be included in the subpoena.  The entities contend that the subpoenas did not include the mandatory advisements (DN 26, p. 6-7).  Wedding avoids addressing whether she complied with this requirement by arguing that she is not obligated to demonstrate compliance in a motion to compel (DN 31, p. 14).  By choosing to reply in this manner, the clear inference is that she did not include the language in the subpoenas.  The form subpoenas she issued to the entities state

> [t]he following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

(*See e.g.*, DN 32-5).  However, the subpoenas and returns she filed do not reflect any of the attachments.  *See* DN 32-5 through 27.  Wedding further advances an equitable argument that the entities have not demonstrated prejudice due to the lack of notification, as they "have had ample representation and notice of Rule 45's requirements" (DN 31, p. 14).  Wedding offers no authority in support of her argument (*Id.*).

The entities likewise offer no authority in support their position that the lack of notice renders the subpoenas invalid, and only state that "[t]hese requirements exist to protect the due process rights of non-parties.  Due process therefore compels the conclusion that a subpoena cannot be enforced if it omits the required notices" (DN 26, p. 6-7).  Where a party learns of a technical deficiency in a subpoena, it may cure the deficiency.  *South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2017 U.S. Dist. LEXIS 142706, at *23-24 (W.D. Ky. Sept. 5, 2017).  The undersigned notes that the entities did not raise this issue of technical compliance when they served their objections on Wedding and raise it for the first time in response to her motion to compel. (*See* DN 17-4).  Moreover, the mere identification of a technical deficiency in a subpoena is insufficient to alone merit nullification.  *See Kitchen v. Corizon Health, Inc.*, No. 1:16-cv-1068,

13

2017 U.S. Dist. LEXIS 182964, at *16 (W.D. Mich. Nov. 5, 2017).   The entities have not established any prejudice as a result of Wedding's failure to include the language from the Rule in the subpoena.   To the contrary, they appear to have fully exercised their right to object as set forth in the Rule, regardless of any lack of formal notice.

    5.   <u>Wedding failed to serve notice of the motion to compel on the subpoenaed entities.</u>

Rule 45 requires that a party may move the court for an order compelling production "on notice to the commanded person."   FED. R. CIV. P. 45(d)(2)(B)(i).   The entities contend that Wedding filed her motion through the Court's electronic filing system, which only provides notification to the parties (DN 26, p. 7).   As they are non-parties, the entities argue that Wedding failed to provide them with notice of her motion as required by the Rule (*Id.*).   "Notice" need not be provided to the entities in the same manner as service of a pleading.

> To be sure, Federal Rule of Civil Procedure 45 generally requires personal service of a subpoena on the non-party required to comply, *see* Fed. R. Civ. P. 45(b)(1), not on that person's counsel, unless counsel is authorized to accept service.   The requirement of personal service of a Rule 45 subpoena does not apply to subsequent filings to enforce that subpoena, including service of a motion to compel a non-party's compliance.

*Freeman v. Giuliani*, No. 21-3354 (BAH), 2023 U.S. Dist. LEXIS 129605, at *21 (D.D.C. July 13, 2023) (citation omitted).   Here, the fact that the entities filed a Response in opposition to Wedding's motion to compel demonstrates that they were on notice of the motion.

    6.   <u>Responding to the subpoenas will impose an undue burden and expense on the responding entities.</u>

The entities assert that responding to the subpoenas will "require significant investment of resources and expense to respond, including tens and potentially hundreds of hours of administrative time and hundreds of dollars of computer-use resources at each facility, plus attorney time to review and confirm specific records, redactions, and lack of privileged or other non-discoverable information" (DN 26, p. 11).

> "The party claiming that discovery is burdensome does have an obligation to make that claim with specificity." *Ross v. Abercrombie & Fitch Co.*, No. 2:05-cv-0819, 2010 U.S. Dist. LEXIS 47620, at *10 (S.D. Ohio May 14, 2010) (citing *Lurensky v. Wellinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009) (party resisting discovery on grounds of undue burden "must show good cause for the proposed limitation of discovery, including specific, articulable facts and not merely speculative or conclusory statements."). Without such a showing, the Court simply may not preclude discovery on the grounds that to allow it would unduly burden the responding party. *Ross*, 2010 U.S. Dist. LEXIS 47620, at *11; see also *Desai v. Charter Commc'ns, LLC*, No. 3:14-CV-459-DJH, 2016 U.S. Dist. LEXIS 198009, at *10 (W.D. Ky. Jan. 15, 2016) (holding a general claim of undue burden unsupported by specific facts is insufficient to deny discovery).

*Eckles v. Archer-Daniels-Midland Co.* No. 5:21-CV-00046-BJB-HBB, 2024 U.S. Dist. LEXIS 39146, at *10 (W.D. Ky., Mar. 6, 2024). There is a significant difference between investing "tens of hours" into responding to discovery requests and investing "hundreds of hours." The entities offer nothing that makes one more likely than the other, particularly since "such record production should be relatively simple, as federal law requires employers to keep records identifying employees and reflecting their wages, hours and other conditions of employment." *Berner*, 2023 U.S. Dist. LEXIS 150736, at *5-6 (internal quotations omitted). As the entities have failed to make more than a generalized claim of burden, they have failed to demonstrate the existence of undue burden.

In addition to the objections stated in their Response, the entities also argue that Wedding should not be permitted to cure any deficiencies they have identified in her motion with subsequent submissions in Reply (DN 26, p. 13-14). Given that the majority of objections the entities asserted in their Response were not set forth in their original objections, the Reply represents Wedding's first opportunity to confront those objections.

And finally, subsequent to the close of briefing on this motion, Wedding filed a supplement with additional exhibits (DN 39). The entities responded with a motion to strike the supplementation as unauthorized or, in the alternative, for leave to file a sur-reply (DN 41). The

Court has found sufficient basis in the primary briefings to rule on the motion and has not found it necessary to rely upon the supplemental filings.  For this reason, the motion to strike or file a sur-reply is moot.

WHEREFORE, the Plaintiff's motion to compel subpoena discovery from the non-parties (DN 17) is **GRANTED** in **PART** and **DENIED** in **PART**.  The non-party subpoena recipients shall produce to the Plaintiff, **within 30 days of entry of this Order**, the documents as described herein as the Plaintiff's compromise production proposal, excepting employee contact information (DN 31, p. 9 n.20).  The remainder of Plaintiff's subpoena requests may be considered at a future date but, for the present, are **DENIED**.

FURTHER, the non-party subpoena recipients' motion to strike (DN 41) is **DENIED AS MOOT**.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

September 25, 2024

Copies to:      Counsel

16